Good afternoon, Your Honors. Tariq Adlai on behalf of Modi Mizrahi. Just a road map, I propose to devote my time to two terms that appear to be war-shocking plots for the federal judiciary right now. One is, what does it mean to improperly use a means of identification so that it becomes a federal crime punishable by an additional two years of imprisonment on top of any punishment for the underlying crime? And second, what does it mean to go above and beyond committing a crime so that you're no longer in the typical area and your actions are deemed sophisticated? In both of these areas, sentences are being enhanced or not, simply because of the intuitions of individual jurists. Hopefully I can do all that and answer all your questions and still reserve a minute or two for rebuttal. With regard to the 1028, the facts are really simple. Mr. Mizrahi entered his business's name on a check, pre-signed by his employer, and then he deposited it to his account. There are myriad ways to commit embezzlement. This is one of them. But to uphold the additional two years here, I think the central question has to be, why is this embezzlement more aggravated, simply because he did it by misappropriating his employer's check, pre-signed check, rather than some other method of embezzlement? Identity theft is not just theft or fraud. Congress enacted 1028A to reduce a different type of harm, a harm not already protected by the theft and fraud statutes. And although 1028A generically uses the term use of identity markers, it has been made clear that the statute is not violated merely because someone else's name or marker shows up somewhere. Rather than prescribing the mere mention of another's name, the statute is focused on a particular type of harm. And I submitted a 28J letter earlier this morning. Congress was particularly concerned about defendants passing themselves off as another, exercising authority on behalf of another or acting on behalf of another. Identity thieves don't just steal assets. For it to be identity theft, people end up fraudulently establishing credit, running up debt. They take over financial accounts in ways that are difficult, if not impossible, to stop. So, if I may interrupt you for a moment, would it be identity theft if somebody used somebody else's credit card? I don't think that the card itself would necessarily be identity theft. Well, I guess the way it would be criminal is they would use somebody else's credit card and make a purchase, and they would be impersonating the actual owner of the credit card, using that to steal money, essentially. So, how is that different from using a check? So, different from using a check, I wouldn't say that there's much different at all. Okay, so then the first question is, would using the credit card be aggravated identity theft under 1028? I think identity theft, which is the core of this, the problem is when someone, and I've been told not to sort of talk in abstractions, but they seize information. And what Congress was concerned about was that in the modern age, thieves no longer needed documents or credit cards. I mean, 20 years ago, they needed a credit card. They needed an identity card. So, now they could use your credit card number, right? So, numbers, account numbers, that would count.  Right. So, if somebody took your credit card and copied down your number and then started making charges, yes. Yes. But I think if all they have is the credit card, they run it through. I don't think that's identity theft. I don't think that's this case. And I don't want to sort of get too off what we have here. But what you're suggesting is whether this is identity theft depends on really how it is accomplished at a granular level, whether they run the magnetic strip of the card or whether they just use the numbers and type them in and use your account number to steal from you. It could be. It could be. I am not asking this Court to derive a theory, a complete comprehensive theory of identity theft. But what I do think is happening is that with identity theft, people can, the impersonated victim can wind up having tons of debt. So, one of the problems with identity theft that Congress was seeking to get at with your credit card, the consumer protection laws actually protect consumers, so that we can complain to the credit card and say, that wasn't me, that wasn't mine. And we're limited. It doesn't protect business users, business credit cards. Oh, certainly. Certainly. Absolutely, Your Honor. I don't mean that. And so, the school's credit card was used. Obviously, I know it wasn't. But if the school's credit card was used, what difference does it make that the check was used? Because the way I see it, I mean, Mr. Mizrazi misused the school's check, misused the treasurer's signature, which is on the check. The treasurer is an individual human being, even if we agree with your position on what an individual is. He used the school's funds without the school's authorization to further his scheme to defraud investors because he used those funds to then pay off some of the investors when he couldn't pay them earlier. And had he not been able to do that, the fraud would have been exposed and come crashing down. That is fraud, Your Honor. That is fraud. And the use of the check to accomplish that was basically the crux, that was the crux of the problem here. He used the check, somebody else's check without authorization, to commit this fraud. And fraud is one of the enumerated crimes for identity theft. Right. But he did not, he did not expose the school or the treasurer to any of the concerns that motivated what, to do have been emphasized, that the identity theft crime needs to be narrowly targeted. It's not, it's not just indiscriminate. It has to be at the crux of what, of the misrepresentation that is illegal. Right. And here, I mean, you said earlier that to use somebody's identity, which could be their name, right, and without authorization, essentially he used the treasurer's name to falsely convey that the check had been authorized to him. So here's where I would distinguish the crux. Okay. And that is that actually that there was nothing on that check as when he received it that was criminal, that was a problem. Not the names, not the addresses, not the signatures, not the banking numbers, the crux. What made this criminal was that he took it and put his name on it and then deposited to his account. Right. But when he did that, he was using the fact that the treasurer's name and signature was on it to falsely convey to the receiving financial institution that that check had been authorized. So in a broad sense of the word use, that is correct. But Dubin emphasized that we need not to use the broad use, the broad definition of use. Without that name, that check would not have cleared. But it would have been an attempted crime. So that is correct. I mean, if the banking numbers had been wrong, if he had forged the signature, if he had forged, if he had signed his own name to the check, I mean, it sounds like he gets The use of the treasurer's name was absolutely necessary for him to fraud him and get that money. Actually, I think in the modern day of processing, I think the answer is actually not, that any, that a check will end up clearing until as long as there is a signature or a scrawl there. So I understand, yes, the name, it shouldn't have been done, but the treasurer was not exposed, didn't have any exposure to having to clean up his credit. Where is that, that's, where is that an element of the identity theft? When Dubin said, so Dubin said, what is it that makes the predicate offense criminal? And the fact that the treasurer's name is on the check isn't what makes depositing it to his account criminal. It's depositing it to his account. That's what makes this criminal. I'm pretty sure it's depositing a check that wasn't actually authorized to him is what makes it criminal. Absolutely. Absolutely. That it wasn't authorized. Without that signature, right? It's using that signature that made that possible. So it made it. I mean, if a check had actually been written to him, there would be, that would not have been fraudulent. Certainly, but the embezzlement itself was not made worse. I mean, what Congress did is they enacted 228A even though they already had the fraud and theft statutes. And they did that in order to protect something else. And that's something. If he had access to the school's bank account directly and he had just taken the money directly, that would be embezzlement without identity theft. But in this case, he needed to misuse the treasurer's name in order to get that check to clear. Only in a broad sense of use. I mean, if I presented a check made out to me, no one would think that I was committing identity theft just because it wasn't a legitimate check or that I had misused it. That is not, I mean, Dubin emphasized that this statute needed to be tailored to classic identity theft. Yes, there is a use. In the broad sense, there is a use. But there is not a use that, one of the problems is when an identity theft, a thief, gets control of your assets, you've lost control. They can commit crimes in your name, in your name, and you can end up with civil judgments against you, with criminal judgments against you. They can declare bankruptcy in your name. And those types of harms is exactly what Congress was trying to... Your time is running low and you mentioned sophisticated and I came with one question on sophistication. Maybe I should ask it and then let that tee up your argument if you want. But it seems to me with 30-something, 32, 33, 34 people being defrauded to give up millions of dollars is not that easy. And they were presented with a prospectus that convinced them that this is a real company and does real stuff. They were presented with the fake E-Trade account statements that made it look realistic. They were persuaded that Mr. Mizrazi was using these techniques to basically have risk-free trading with various types of techniques. That's not that easy to persuade someone to give up a lot of money and do it persuasively and it strikes me that only someone who is pretty sophisticated in creating that can persuade someone to give up millions of dollars. So your Honor, in an abstract way, if this were the public at large, perhaps. This was a small community that makes it indeed in part particularly harsh on all involved. This was a small religious community who all knew each other and they knew, they'd known him, Modi, for years, they'd all known each other for years. And I think falsified documents, that's the gist of investment frauds. I mean prospectuses, trading statements, Congress mandated, not over, nearly a hundred years ago, mandated that investment organizations provide a prospectus of the businesses, finances and business. Explain how he could do this without risking, without them risking their principal and guaranteed so much money. That is a pretty sophisticated technique that he'd have to explain, right? I think it's pretty easy to lie. But not lie persuasively. I can lie to you and say, give me your money and I promise I'll double your money in three weeks and no risk. But I can't do it persuasively unless I'm pretty sophisticated. Your Honor, there is nothing in this, in the record that indicates how persuasive or how compelling. In fact, the district judge, one of the faults that I brought up is that he relied heavily on the evidence at the co-defendant's trial. But the other problem, ultimately, is that you can't commit an investment fraud without what you're talking about, without falsified prospectuses, without falsified statements. I mean, they're typical and inherent in any fraud, in any investment fraud. And I think that's what, that's the standard. The standard is, is this outside of what's for a fraud of this type. And, and I would bring the, direct the court's attention to the fact that the guidelines, I know the guidelines aren't exclusive, but they talk about something very specific. Cross, inter, inter-jurisdictional offshore accounts, multiple corporate shells. And what you're talking about, Judge Simon, is just a whole different level. It, it pales in comparison to the level of sophistication of corporate shells. Corporate shells, you need an attorney to get involved, or at least someone who's doing that. Putting up the, some documents together, not so. I, I see I'm out of time. I will, give you a couple of minutes for rebuttal. I appreciate that, Your Honor. May it please the court. William Glasser for the United States. Ms. Rahi can't show any reversible error in his conviction or his sentence. To start first with the aggravated identity theft statute. The, the main question that seems to be in dispute today is whether or not the, someone commits aggravated identity theft when they use the means of identification of another person to commit an offense when they don't do something sort of above and beyond that. And take on that person's identity to the extent that the person's entire identity is at risk. Such as, for example, being accused of additional crimes. That's just not something that's in the text of the statute. And it's not something that the Supreme Court required in Dubin. So, if we, if we think of the, the question of, is someone's identity at risk, if their financial accounts are at risk, and they absolutely were here. In this case, obviously it was the schools rather than the treasurers. Then, that easily satisfies the requirements of Section 1028A. Without us proving that somehow the person's entire identity has been adopted by the fraudster. The, this court in its Harris decision, which both briefs discuss. Specifically relying on the Sixth Circuit's Michael decision. Rejected the view that there needed to be impersonation in order to violate Section 1028A. The Michael case, citing prior Sixth Circuit precedent, said that, although it adopted a Dubin-like standard where overbilling isn't enough. It said that if a doctor, or excuse me, a Medicare biller were to submit falsified prescriptions with the false signatures of a doctor, that that is identity theft. And the Supreme Court in Dubin cited Michael, cited this court's Hong case as well. Cited those as good examples of where to draw the line. A misrepresentation about who was involved. And that's exactly what we have here, even if it doesn't rise to the level of actually impersonating the person. There's a misrepresentation about who was involved in authorizing that check to Mr. Mizrahi's company. The representation that Mr. Mizrahi made was, the treasurer authorized this check to me. When in fact, he himself did that after fraudulently obtaining pre-signed checks. If the court has no further questions about the 1028A, I'm happy to briefly touch on sophisticated means as well. The question on sophisticated means is simply whether the district court abused its discretion or clearly erred in finding that sophisticated means were involved here. And that's a pretty deferential standard to the district court. The district court explained all the things, Judge Simon, that you mentioned, that the victims here were presented with falsified documents. In addition, as we pointed out in our brief, there were these lolling payments that actually were crucial to sustaining the fraud over a long period of time. And those representations, you know, perhaps maybe one of these things in and of itself might not be enough. But when you take all of these factors together, there's also the fact, this very complicated transaction of providing collateral for one investor, where Mr. Mizrahi and his brother persuaded their sister and her husband to give a lien on their home as collateral for one of the investors. And then when the investor wanted his money back, they obtained a hard money loan against that home, used it to repay that investor in exchange for a false settlement agreement. I missed why lulling payments are sophisticated. Sure. Your Honor, the reason that lulling payments are sophisticated is that if you just have a bare-bones fraud, bare-bones Ponzi scheme, where you say you're going to give someone a whole bunch of money and you just never give them anything back, the fraud is only going to last so long. The lulling payments, as the Supreme Court even has recognized, I believe the Lane case that we cited in our brief, lulling payments can perpetuate the fraud. And again, maybe lulling payments aren't in and of themselves enough to impose a sophisticated means enhancement. But when you have all these things together, the falsified documents, the lulling payments, and then this very complicated transaction that I described, all of those together were enough for this Court to find no clear error in the District Court's finding of sophisticated means. I have a question for you about Mr. Mizrahi's argument that Section 1028A is void for vagueness. Your brief suggests that plain error review applies, but don't we have the discretion to apply de novo review because your brief did not argue that Mr. Mizrahi forfeited this argument and that the government would be prejudiced if we considered it? So, Your Honor, I do think I made the argument that he forfeited it, and if I didn't make that clear, I apologize. So, the only arguments that he raised were those contained within his motion to withdraw the plea based on Dubin, and vagueness is nowhere mentioned in that motion to withdraw the plea. So, he certainly didn't preserve it. And to the extent that this Court believes it can nevertheless address the issue under de novo review, I think the only avenue for that would be the pure question of law exception, which, as you likely know, this Court is considering in the Gomez case. I believe our oral argument is scheduled for next week. So, it's not clear that the pure question of law exception is going to survive the en banc proceedings in Gomez. But regardless, I think if this Court were to even apply de novo review, the vagueness challenge would not prevail. The only authority that he can cite for his claim that it's unconstitutionally vague is Justice Gorsuch's concurrence in Dubin. That view was rejected by eight members of the Supreme Court, or at least they didn't, you know, it wasn't teed up in one sense in Dubin, but the majority responded to the dissent suggesting that no, their reading of Dubin was sufficient to avoid, pardon me, their reading of the statute was sufficient to avoid vagueness. So, there's just essentially no support for that argument, even if this Court were to apply de novo review. But we do think that he forfeited and he can't show any plain error because no court has accepted that argument. If the Court has no further questions, I would ask the Court to affirm. Thank you. Thank you. Thank you, Your Honor. With regard to the financial accounts at risk, I would simply say that the risk was not unlimited. It was able to be curtailed by the cancellation of checks, by firing Mr. Mizrahi, by canceling, in the other example, the courts used canceling a credit card. These are the things that distinguish the use of a name. I mean, every investor's name was used in this case. And so, what is it about this case that makes the fact that he embezzled via a pre-signed check, an authorized signed check, what makes it worse that mandates, that warrants the extra two-year penalty? With regard to Harris, the misrepresentation of who is simply the sine qua non of what constitutes identity theft. It is not everything. And I think the rest of that, there is more to it than just saying it's a question of who. The school, the treasurer were, in fact, involved. There was no misrepresentation of that. As for the abuse of discretion standard, I would note that, again, the district court considered all sorts of things that were not part of Modi Mizrahi's record. And with regard to lulling Judge Simon, first of all, we don't even know what was a lulling payment. We just know that there were payments. And, in fact, Mr. Mizrahi, we know, the government concedes that he gave out at least $3.4 million. The SEC found that he returned $4 million after collecting only 7.3. This is not lulling. He did not do the, he didn't get into this scheme intending to steal from his friends and from his community. He was in over his head and he kept digging. And those, by trying to refund people, to make good on his worthless promises, that's not aggravating. That's mitigating. The court did not seem to be concerned about the collateral, the use of a third party's collateral, Mr. Yehezkelov's request for security. That wasn't Mr. Mizrahi's doing. That was simply an investor saying, I'm putting up a lot of money. I want, I want some guarantees here. And the only thing that the government points to in that transaction as complicated was that he said, I didn't steal. And that is not sophisticated. It is typical of any fraud. So you are over time now. Thank you. Thank you both for your arguments this afternoon. And this case is submitted. And we are adjourned. Thank you, Your Honor. Thank you. And thank you for your time. All rise.
judges: BADE, SUNG, Simon